## RUSHIN v. CENTRAL OF GEORGIA RAILWAY CO.

1. A passenger who is injured by the negligence of a carrier may, at his election, sue for a breach of the contract to safely transport, or for a breach of the duty springing from a violation of the contract of carriage.

2. A petition does not commingle the two remedies when all the allegations taken together tend to a statement of a ground of recovery for a breach of duty. The petition is not rendered double by the inclusion of an inapt expression, where it is apparent the plaintiff does not rest his claim for recovery upon it.

3. A petition for damages against a railroad company, for injuries alleged to have been caused by an employee carelessly and willfully slamming the car door against the plaintiff's hand, which was resting against the door facing or jamb, though it sets forth in general terms a contract of carriage and alleges a breach thereof, should be treated as an action ex delicto, when it is manifest from the allegations and structure of the petition that the plaintiff is seeking a recovery because of the defendant's breach of duty, and not on account of its breach of contract.

Submitted May 21,—Decided July 13, 1907.

Action for damages. Before Judge Little. Muscogee superior court. May 19, 1906.

In his petition against the Central of Georgia Railway Company, as amended, Rushin alleged, that on October 18, 1904, he purchased from the agent of the railway company at Buena Vista a ticket from that place to Columbus, Georgia, "the said corporation agreeing, by the terms of said purchase, to safely transport your petitioner from Buena Vista, Ga., to Columbus, Ga., a point on said line of railway;" that after purchasing the ticket he got on the train, "for the purpose of being carried by said corporation, according to the terms of the contract as evidenced by the purchase of the ticket aforesaid," to his destination; that the train was stopped at Zellobee, a station where passengers got on and off the train, and while the train was so stopped petitioner and others got off to speak to some friends, who were on the ground, and got back on the train when it was ready to leave the station; "that when in the act of returning to the car when leaving said station, he was injured as follows, and in the following manner: In going back into the train he had reached the platform and started into the car, and there met the porter on said train coming out the door; that he stepped to one side to allow the porter to pass, and put his hand in the door-facing or jamb as he did so; that

as the porter, when he passed through the door slammed it to with such force that the ends and the nails were mashed off two of the fingers of his right hand; that in attempting to enter said door, he reached for the knob thereof, to open the same, when the porter of said train pulled it out of his way by opening said door; that he then attempted to enter, and the porter in coming out of the door came in collision with him, and thereby made it necessary for plaintiff to either shove porter out of his way or stand aside until said porter could come out. Choosing the latter, and with due caution and circumspection on his part, he stood aside, the train then being in motion; he put his hand on said door-facing where the door opened, in order to steady himself and to prevent falling or being brushed away by said porter; that said porter with full knowledge of his position, and seeing his hand on said facing where said door shut, and with full knowledge that to slam said door to would catch his hand, did carelessly, negligently, recklessly, · and wilfully slam said door to on plaintiff's hand, wounding and injuring him as aforesaid; that petitioner and said porter (who was an employee of said corporation) were going facing each other, petitioner going into the car, and the said employee coming out, and petitioner could be plainly seen by said employee, and that this act on the part of said employee was an act of carelessness and negligence; that said employee did see said plaintiff, and saw where his hand rested, and could have by the exercise of ordinary care and diligence prevented said injury to said plaintiff, but, with a wanton disregard for plaintiff's safety, did slam said door to on plaintiff's hand, injuring him as aforesaid; and seeing plaintiff's hand so caught in said door, still held to the bolt thereof and continued to press the same against plaintiff's hand, notwithstanding plaintiff's cry from pain caused by said mash, until plaintiff shoved him away, at the same time telling him to open the door and let him get his hand out; for which tortious act plaintiff was injured and damaged in the sum of three hundred dollars." Special damages to the extent of ten dollars were alleged; two hundred dollars was claimed for pain and suffering, and because the "carelessness and negligence on the part of said defendant [was] so willful that it amounted to aggravating circumstances," for which plaintiff also claimed one hundred dollars as punitive damages. The thirteenth and last paragraph of the petition as amended sets forth:

"Your petitioner would show that said corporation was negligent of a public duty which it owed to said plaintiff, flowing from said contract of carriage, and violated the terms of said contract, as evidenced by the purchase of the ticket aforesaid, to safely carry said petitioner from Buena Vista to Columbus, in that had said employee exercised ordinary care and diligence such injury would not have occurred; and by reason of such negligence of its duty due said plaintiff as a passenger by reason of said contract of carriage, and violation of said contract by which tortious act aforesaid, your petitioner has been injured and damaged in the sum of three hundred dollars as aforesaid." The defendant demurred generally; and also specially to several paragraphs of the petition, on the ground that the suit was laid on a breach of contract, and as these paragraphs complain of tortious acts in the discharge of a public duty, it is an effort to join an action ex delicto with a suit for breach of contract. The trial judge sustained both demurrers, and dismissed the petition; to which ruling plaintiff excepted.

*John C. Butt* and *W. D. Crawford,* for plaintiff.

*Charlton E. Battle,* for defendant.

Evans, J.   A passenger injured while on the cars in the progress of his journey by the negligence of the carrier has two remedies: one an action for the breach of the contract; the other an action on the case, for the wrong; and he may elect which remedy he will pursue. *Patterson* v. *Augusta R. Co.,* 94 *Ga.* 140. Of course he can not join both causes of action in the same suit; if he does so, an appropriate demurrer will require a dismissal of the petition for duplicity, unless the duplicity is removed by an amendment eliminating the allegations inappropriate to the remedy elected. A petition is not necessarily duplicitous because of some inconsequential or inapt expression, which may not be strictly pertinent to the case therein made. Our statute does not require the plaintiff to state his case with all the niceties and refinements of special pleading; it is satisfied when he plainly, fully, and distinctly sets forth his charge, ground of complaint and demand, and the name of the person against whom process is prayed. In stating the narrative of facts upon which a recovery is sought it is common, especially in actions of this kind, for the plaintiff to state matters from which it appears that he may have another cause of action, either by way of amplification or as strengthening his description

of the cause of action on which he relies, when it is obvious he does not rest his claim of recovery upon them. · These superfluous statements are but surplusage; they mar the symmetry of the petition, but do not destroy it by making it double. In the case of *Seals* v. *Augusta Sou. R. Co.*, 102 *Ga.* 817, the action was against the railroad company for wrongfully carrying a passenger beyond the station to which she purchased her ticket. The petition alleged a contract of carriage and its breach, and the insistence of the railroad company was that the suit was thereby rendered one upon the contract. This court, however, held that the character of the plaintiff's suit depended, not upon a single allegation independently construed, but upon a consideration of the whole petition. The structure of the petition in the present case clearly shows the action to be ex delicto. It is true that the plaintiff alleges with great particularity a contract of carriage; but this allegation is a mere matter of inducement to show the public duty which the carrier owed to the plaintiff. As was said in the *Seals* case, "those allegations which set forth· the contract may well be taken as simply intended to lay the foundation for the introduction of evidence to show the existence of this public duty, preparatory to the introduction of further testimony to establish a violation of that duty amounting to the tort, which appears to be the real gist of the action." The fourth, fifth, sixth, seventh, and eighth paragraphs contain allegations entirely appropriate to an action for a breach of public duty. The claim of damages for physical pain and suffering, and for careless and willful conduct of the defendant's employees, plainly shows that the plaintiff is suing for the tort, and not for the breach of the contract. But it is contended, that, even after paragraph thirteen was amended, there remained an allegation that the defendant had violated the terms of the contract to safely carry the plaintiff. This expression, however, when taken in connection with the other allegations of the same paragraph, shows that the plaintiff made reference thereto, not for the purpose of declaring on the breach of the contract, or uniting any action which he might have for failure to safely transport with that for which he sues, but to show that his injuries were caused by the negligence of the defendant's employees in the violation of its public duty growing out of the contractual relation of passenger. We have carefully examined the petition, and do not

believe that it was open to the criticism of duplicity which was raised by the special demurrer.

The general demurrer was also sustained and the petition dismissed. As amended the petition stated a case of a passenger who was wilfully injured by an employee of the carrier. Surely no argument is needed to prove that the plaintiff is entitled to recover upon a case such as is here stated. In the brief of the defendant our attention was directed to the cases of *Hardwick* v. *Georgia R. Co.*, 85 *Ga.* 507; *Ham* v. *Georgia R. Co.*, 97 *Ga.* 411; *Murphy* v. *Atlanta & West Point R. Co.*, 89 *Ga.* 832, which are claimed to support the contention of the railroad company that no cause of action is set out in the petition. The plaintiff in each of these cases had his hand injured by the slamming of a car door, but under entirely dissimilar circumstances from those alleged in the petition in the present case. In none of them was it alleged that the carrier's servant wilfully injured the plaintiff. The court erred in dismissing the petition on general demurrer.

*Judgment reversed. All the Justices concur.*

---

ENGLISH, administrator, *v.* MARSHALL *et al.,* executors.

1. In 1880 Ogburn executed to Marshall a deed to secure the payment of a debt. Subsequently Ogburn died without having paid the debt. In 1887 the administrator of Ogburn, deceased, without obtaining an order of court, agreed with Marshall that the latter should cancel the evidence of the debt, and be thereafter vested with absolute title to the property. Accordingly Marshall surrendered the notes against Ogburn, deceased, to the administrator, and went into possession of the land, holding the deed thereto which had been executed to him by Ogburn to secure said debt. *Held*, that Marshall's possession was under color of title, and that after seven years' possession his title to the land became absolute.

2. This court can not consider an assignment of error based upon a refusal to allow a witness to answer certain questions, when it does not appear what the answers would have been. *Manry* v. *Waxelbaum*, 108 *Ga.* 14.

3. The court did not err in directing a verdict for the claimant.

Argued May 24,—Decided July 13, 1907.

Claim. Before Judge Littlejohn. Macon superior court. April 14, 1906.

On the 29th day of April, 1880, J. L. Ogburn executed and

delivered to T. J. Marshall a deed to a certain lot of land in Macon County, Georgia, the land in controversy. While this deed was in form an unconditional warranty deed, it is conceded by both sides that it was intended as a deed to secure the payment of a debt, Marshall executing to Ogburn his bond for titles to reconvey the property upon the payment of the debt. Ogburn remained in possession of the premises until his death, which occurred some time during the year 1885. According to the testimony of the plaintiff in error, Ogburn's father remained in possession of the land for two years longer, till 1887. During the latter year, one Glover, administrator of Ogburn, deceased, entered into an agreement with Marshall, the grantee in the security deed, whereby said administrator agreed to surrender the bond for titles to said land, and Marshall agreed to take the land in settlement of the debt which the deed had been given to secure. Accordingly the notes held by Marshall against Ogburn, deceased, were turned over to the administrator, marked, "Settled by purchase of lot of land No. 100 in 13th district of Macon County, Georgia" (the land in controversy). And thereupon Marshall went into possession of the land. This sale was made without order of court, and no writing was signed except that noted above. Subsequently, in September, 1904, English qualified as administrator de bonis non of said Ogburn, and proceeded, after obtaining an order from the court of ordinary, dated December term, 1904, to advertise for sale the land above described, as the property of said Ogburn, deceased. Before the land was sold, on December 3, 1904, T. J. Marshall filed a claim to the property. Pending the trial of this claim said Marshall died, and his executors, T. P. Marshall and C. P. Marshall, were made parties, and the case proceeded to trial before a jury. At the conclusion of the evidence for both sides, the court directed a verdict for the claimant. The plaintiff moved for a new trial, which motion was overruled, and he excepted.